2010 VT 56

## Kaveh Shahi and Leslie Shahi v. Daniel Madden (Deirdre Donnelly, Intervenor)

[5 A.3d 869]

No. 09-184

Present: **Dooley, Johnson, Skoglund and Burgess, JJ., and Crawford, Supr. J., Specially Assigned**

Opinion Filed June 18, 2010

---

144

*Kaveh S. Shahi* of *Cleary Shahi & Aicher, P.C.*, Rutland, for Plaintiffs-Appellees/Cross-Appellants.

*Daniel Madden*, Pro Se, Woodstock, Defendant-Appellant/ Cross-Appellee.

*Wesley M. Lawrence* and *Stephen D. Ellis* of *Ellis Boxer & Blake*, Springfield, for Intervenor-Appellant/Cross-Appellee.

*William H. Sorrell*, Attorney General, and *Julio A. Thompson*, Assistant Attorney General, Montpelier, for Amicus Curiae State of Vermont.

¶ 1. **Skoglund, J.** Defendant Daniel Madden and intervenor Deirdre Donnelly appeal the Windsor Superior Court's imposition of an injunction against Madden based on a hate-motivated crime against Kaveh and Leslie Shahi. Madden and Donnelly claim the trial court lacked jurisdiction to issue the injunction, failed to make the factual findings necessary to sustain such an injunction, and never found Madden committed a "hate-motivated crime" against the Shahis based on the Shahis' ethnicity and/or perceived religion that would support issuance of the injunction. Appellants also argue that in imposing the injunction the trial court violated Madden's right to a jury trial and that Vermont's hate-motivated crime law relies on an unconstitutionally low burden of proof.[1] Because the trial court lacked a sufficient evidentiary foundation for ordering the injunction, we reverse and remand the case.

¶ 2. This appeal is the offspring of a prior case before this Court, *Shahi v. Madden*, 2008 VT 25, 183 Vt. 320, 949 A.2d 1022 (*Shahi I*). That opinion provides ample factual background; thus, we will review the relevant facts here only in brief and lay out further material facts in the discussion that follows. Appellants purchased a property abutting the residence of Kaveh (Shahi) and Leslie Shahi in 2002 and have since built a home on the property. In 2003, after the Shahis refused to allow Madden to cut down a tree on their shared property line, he felled the tree when they were out of town. Appellants settled the Shahis' subsequent claim for timber trespass in October 2004, and shortly thereafter Madden began "waging an offensive of intimidation and vandalism that took a large personal and financial toll" on the Shahis. *Id.* ¶ 1. Over the next several months, he killed two dozen trees on

---

[1] The Shahis also appeal the scope of the injunction on several grounds.

the Shahis' property, blocked their driveway by felling another tree, spread garbage, sharp objects and bullets in their yard, and allegedly poisoned their dog. The Shahis eventually filed suit against Madden on a number of tort claims and added claims for further damages, injunctive relief, attorney's fees, and costs. Finally, they requested injunctive relief based on Madden's commission of hate-motivated crimes in violation of 13 V.S.A. §§ 1455-1457.[2]

¶ 3. The Shahis' claims went to a jury trial (Cohen, J.) on July 12 and 13, 2006. Before raising it with the jury, Shahi and the court determined that the request for injunctive relief under the hate crimes statute would be decided by the court after trial. The jury returned a verdict in the Shahis' favor and awarded damages in excess of $1.8 million, including $1 million in punitive damages. The trial court rejected Madden's subsequent motion for a new trial.

¶ 4. In September 2006, Madden appealed the verdict on several grounds, and on March 7, 2008, this Court affirmed the jury's verdict including the punitive damages award. *Shahi I*, 2008 VT 25, ¶ 1. On April 2, 2008, the Shahis moved for entry of amended judgment under Vermont Rule of Civil Procedure 59, requesting interest on the judgment while on appeal and raising anew their claim for injunctive relief based on the hate crimes statute. Citing this Court's decision in *Shahi I* as evidence Madden had committed a hate-motivated crime, the Shahis asked the trial court, pursuant to 13 V.S.A. § 1461, to prohibit Madden from:

(1) Committing any crime, including hate crimes against the [Shahis], their family or property;

(2) contacting the [Shahis] or their family; and

(3) coming within one half mile radius of [the Shahis'] residence and property . . . .

Madden contested the order for injunctive relief. He claimed that the trial record could not support a finding of a hate-motivated crime, that the motion was untimely filed, and that an injunction could issue based only on a present showing of necessity.

¶ 5. In May 2008, the trial court (Morris, J.) granted the Shahis' motion with regard to interest. As to injunctive relief, the court

---

[2] Madden also faced criminal charges for some of his conduct and ultimately pled no contest to a misdemeanor in June 2006.

noted that "the express language of [the *Shahi I*] opinion . . . [suggests] the record *would* have supported such a request in July 2006, but neither [the Shahis] nor the trial judge raised the issue in the period following the verdict." Because "evidence as to current circumstances may be most pertinent to the question of whether [injunctive] relief shall be granted," the court ordered a hearing "to address the viability of [the Shahis'] request." At the hearing, Madden reaffirmed his opposition to the injunctive order on grounds of timeliness, waiver, necessity, and equitable factors — namely that he lived less than half a mile from the Shahis. The trial court rejected those arguments, but likewise denied the Shahis' motion, holding that they "cannot rely on the trial record for various reasons," including the fact that "neither the jury nor the Supreme Court directly addressed the facts that would be necessary to support injunctive relief" and "nearly two years have elapsed following the trial." Accordingly, the court ordered a status conference to determine the parameters for an evidentiary hearing.

¶ 6. Following a series of procedural steps, including the withdrawal of Madden's attorney, the Shahis filed an emergency supplemental motion for injunctive relief under 13 V.S.A. § 1461 in November 2008, based on the deposition of a contractor. The contractor had worked on appellants' house and testified that Madden had threatened to kill Shahi in the fall of 2006 and had asked if the contractor would carry out the killing. The trial court (Eaton, J.) denied the emergency motion on the ground that "the alleged discussion(s) recounted [between Madden and the contractor] took place approximately two years ago. In the Court's view, there is insufficient basis for the granting of relief on an emergency basis." The court then set an evidentiary hearing on the original injunctive motion for January 14, 2009.

¶ 7. At the hearing before the trial court (Cohen, J.), the Shahis relied on the trial record to discharge their burden of proof, specifically referring to testimony from the 2006 jury trial and the *Shahi I* opinion, stating "the Supreme Court in its decision also found that the record supported a finding of a hate crime commission." They also called a series of witnesses including: the contractor who testified about Madden's knife collection and his threats against the Shahis in 2006; another contractor who testified about Madden's possession of a pistol in 2004; and a subcontractor who admitted he called Shahi a "towel head" and

had purchased a rifle from Madden in 2004. Shahi also testified that Madden had "severely damaged" his family "in terms of our peace, our property, to this day . . . we have concerns on an on-going basis for our safety, for our security." However, other than continuing to see Madden on the public roads near their houses, he did not describe any specific instances of harm subsequent to the 2006 threat. Madden appeared pro se, testified, and cross-examined witnesses. The trial court issued a final order "relying on the Supreme Court's decision as well as the jury verdict [in the 2006 trial] and also in regard to the testimony today," specifically the "threats of violence made to an individual . . . after the jury verdict." The two-year injunction prohibited Madden from contacting the Shahis and ordered him to remain 300 feet from their home, their places of employment, and their children's schools.

¶ 8. Madden filed an objection to the order, and Donnelly was granted intervenor status to join in the objection only so far as it related to her property interests. After a subsequent hearing on the objection, at which appellants offered witnesses who testified that Madden was not a racist, and a site visit to the parties' abutting properties, the trial court amended the injunction order with regard to the boundary line. The amended order prohibits Madden from "coming within 20 feet of the common boundary line between the plaintiffs' and defendant's property." Both parties appealed.

¶ 9. As an initial matter, appellants and the Shahis raise jurisdictional challenges to each others' appeal. Appellants contend that the trial court lacked jurisdiction to issue the injunction because the Shahis' motion in April 2008 — styled as a Rule 59(e) motion to alter or amend judgment — was untimely filed. See V.R.C.P. 59(e) (motion to alter or amend "shall be filed not later than 10 days after entry of the judgment"). Because the trial court's judgment was final after it rejected Madden's motion for a new trial in late August 2006, appellants argue the Shahi's motion filed more than twenty months later was out of time. We recognize that the Shahis' April 2008 motion sought amended judgment and post-judgment interest, but also referenced the claim for injunctive relief included in their complaint, stating only that there had not been an opportunity to address the issue of injunctive relief before an appeal was filed. Even if true, the trial court in May 2008 was correct in noting that evidence as to

current circumstances was needed to determine if injunctive relief was appropriate. Because there had been no judgment on the hate-motivated crimes injunction request during the 2006 trial, there was no judgment to amend. Viewing the motion as such, the trial court had jurisdiction to adjudicate a prayer for injunctive relief newly brought and did not abuse its discretion in doing so. See *Alden v. Alden*, 2010 VT 3, ¶ 7, 187 Vt. 591, 992 A.2d 298 (mem.) (noting that disposition of Rule 59 motion generally within trial court's discretion); 13 V.S.A. § 1459 (granting superior court jurisdiction over proceedings under hate crime statute).

■ ¶ 10. The Shahis, in turn, contest the trial court's grant of intervention status to Donnelly and her consequent ability to raise certain arguments on appeal. This issue is all the more salient as Madden chose not to file a brief in this Court, but has instead expressly adopted the arguments raised by Donnelly in her brief. As to their first claim, when reviewing the grant of intervenor status, we will defer to the trial court absent an abuse of discretion. *Helm v. Helm*, 139 Vt. 225, 227, 424 A.2d 1081, 1082 (1981). Under Vermont Rule of Civil Procedure 24(b), relating to permissive intervention, "anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common," so long as the application is timely. V.R.C.P. 24(b). In determining timeliness, we have counseled trial courts to consider at least four factors: possible harm to plaintiffs; power to have sought intervention at an earlier stage; progress of the case; and the availability of other means to join the case. *171234 Can. Inc. v. AHA Water Coop.*, 2008 VT 115, ¶ 19, 184 Vt. 633, 968 A.2d 303 (mem.).

■ ¶ 11. Here, the Shahis had attempted to join Donnelly in the original suit, but withdrew the motion prior to the 2006 trial. Following the renewal of their request for an injunction in April 2008, Donnelly filed several motions as an "interested party." The trial court ignored or denied such motions until Donnelly moved for party status following the court's ruling on the injunction in January 2009. Because her status was granted during the pendency of Madden's motion to reconsider the injunction and before the court's site visit or issuance of the final injunctive order, it did nothing to slow the proceedings. Moreover, Donnelly's intervention was expressly limited to her "property interests," and the central issue before the court on Madden's motion to reconsider was how

the abutting nature of the parties' properties would affect the injunction. Thus, we conclude the application was timely and the trial court properly admitted a party with an interest in the case.

¶ 12. Addressing the Shahis' latter claim, our case law has held that in various contexts, "an intervenor . . . may appeal any issue decided below which adversely affects [its] interests." *Ihinger v. Ihinger*, 2003 VT 38, ¶ 6, 175 Vt. 520, 824 A.2d 601 (mem.) (discussing children's right to appeal family court decision); accord *Coop. Fire Ins. Ass'n of Vt. v. Bizon*, 166 Vt. 326, 331, 693 A.2d 722, 725 (1997) (noting in indemnity action, "[g]enerally, an intervenor . . . may appeal, by virtue of the party status, any issue on which the party is aggrieved"); see also *In re Garen*, 174 Vt. 151, 153-54, 807 A.2d 448, 449-50 (2002) (permitting intervenor's appeal under environmental court rules, even though original party had withdrawn). Here, Donnelly's intervention was expressly limited to her "property interests." This limitation was based on her proffered ground to intervene: to protect her use and enjoyment of her property with her husband, including living in their newly constructed home adjacent to the Shahis' property. She argued the requested injunction — originally prohibiting Madden from coming within a half mile of the Shahis' property boundary — would severely impact such use. Regardless of how the issues she raises on appeal may or may not be limited based on the scope of her intervention, the fact that Madden has formally adopted her arguments as his own — and had raised them himself in the proceedings below — puts them squarely before this Court. See V.R.A.P. 28(g) ("[A]ny number of [appellants or appellees] may join in a single brief, and any appellant or appellee may adopt by reference any part of the brief of another.").

¶ 13. Turning to the crux of appellants' argument — that the trial court erred in granting the injunction because it lacked a sufficient basis for imposing the injunction or finding Madden committed a "hate-motivated crime" — we begin by outlining the statutory structure in question. Vermont's hate crimes statute strives to protect "particular classes or groups of persons" from "wrongful activities motivated by hatred." 13 V.S.A. § 1454. It does so through criminal sentence enhancement and the establishment of civil liability for hate-motivated crimes. *Id.* § 1455 (sentence enhancement); *id.* § 1457 (civil liability and enforcement); see also *id.* §§ 1458-1466 (outlining procedure for civil injunctions). Ger-

mane to this case, enforcement of civil liability is "[i]ndependent of any criminal prosecution" and is available to "any person suffering damage, loss or injury as a result of [criminal] conduct," *id.* § 1457, that was "maliciously motivated by the victim's actual or perceived race, color, religion, national origin, sex, ancestry, age, [U.S. military] service . . . , handicap . . . , sexual orientation or gender identity." *Id.* § 1455.

¶ 14. Beyond the statutory provision, *id.* § 1457, allowing recovery for compensatory and punitive damages — along with related costs and legal fees — a complainant can seek a hate-motivated crime injunction requiring the defendant to refrain from committing any crime against complainant, restricting the defendant's ability to contact the complainant, and prohibiting the defendant from coming within a fixed distance of the complainant. *Id.* § 1461. The complainant need only file a complaint under chapter 33 of Title 13 alleging a hate-motivated crime and damages. *Id.* § 1459. The statute defines "hate-motivated crime" to mean any "conduct prohibited by chapter 31 of this title [including "any crime . . . maliciously motivated," *id.* § 1455] . . . which causes damage to the person at whom the conduct was directed." *Id.* § 1458(3). "Damage" is defined as "destruction or defacement of personal or real property, personal injury or the receipt of threats of violence." *Id.* § 1458(2). Upon a finding by a preponderance of the evidence that a defendant "has committed a hate-motivated crime against the complainant," the court "shall make such preliminary and final orders as it deems necessary to protect the complainant and the complainant's property and other appropriate persons who are in need of protection." *Id.* § 1461(a); cf. 15 V.S.A. § 1103(b) (providing for similar burden of proof in relief from abuse context). A hate crimes injunction is a civil proceeding and must be founded on the complainant's proven need for protection from likely harm. See *Vt. Div. of State Bldgs. v. Town of Castleton Bd. of Adjustment*, 138 Vt. 250, 256-57, 415 A.2d 188, 193 (1980) (noting an "injunction is an extraordinary remedy" which "may issue only in cases presenting some acknowledged and well-defined ground of equity jurisdiction, as when it is necessary to prevent irreparable injury").

¶ 15. Finally, the statute provides some limitations on the issuance of relief, namely the duration of any injunction. The statute explains that any preliminary injunction "shall remain in effect until a final order is issued or for a fixed period that the

court deems appropriate, but in no event more than 120 days without a further order." 13 V.S.A. § 1461(b). Any final order must likewise contain a fixed time limitation and last no more than "two years without a further order from the court." *Id.* That said, the court "may extend any order for such time as it deems necessary to protect the complainant," and such an extension does not require "that the defendant has committed a hate-motivated crime during the pendency of an order," but only that the court find "a reasonable basis for continued protection." *Id.* The statute strikes a balance by limiting the duration of any given injunctive order, but permitting complainants to reapply so long as reasonably necessary. Compare 15 V.S.A. § 1103(e) (providing similar balance in renewing relief from abuse orders).

¶ 16. Taken as a whole, then, we recognize that in order to impose a hate crimes injunction, a trial court need find by a preponderance of the evidence that: (1) defendant engaged, caused, or attempted to engage in wrongful conduct toward complainant; (2) which caused the complainant damage, loss, or injury, including fear; (3) and was maliciously motivated by complainant's protected characteristics; and that (4) injunctive relief is reasonably necessary to protect the complainant, the complainant's property, and other appropriate persons — including other members of the complainant's protected class — and their property. We highlight the fact that the "wrongful conduct" so proscribed need not result in criminal prosecution, as any civil relief can be sought independent of the State's actions; however, the complainant must still prove that it was more likely than not that the defendant committed a crime which both caused the complainant damages and was motivated by discriminatory animus. Likewise, there must be a showing of necessity for an injunction to issue, though we note that nothing in the statute imposes any specific period of limitation between the wrongful conduct and the injunction. The requirement is simply that the court find protection is reasonably necessary when assessing the present circumstances of the complainant. An inference can be made that the two-year limitation on the injunction present in the statute, 13 V.S.A. § 1461(b), provides an outer limit to the time period in which an injunction must be sought. Reviewing the facts before us with this framework in mind, we cannot uphold the sought injunction.

¶ 17. We will affirm a trial court's grant of an injunction so long as it is supported by the evidence and not an abuse of discretion. See *Huard v. Henry*, 2010 VT 43, ¶ 8, 188 Vt. 540, 999 A.2d 1264 (mem.); *Pion v. Bean*, 2003 VT 79, ¶ 24, 176 Vt. 1, 833 A.2d 1248. In granting the Shahis' injunctive relief, the trial court relied on three sources of evidence — testimony from the January 14, 2009 hearing, this Court's opinion in *Shahi I*, and the jury verdict in July 2006 — only one of which is in the record before us, and only one of which should have been relevant to the proceedings. To begin with, reliance on the language in *Shahi I* to support the finding of a hate-motivated crime was misplaced. As noted above, the issue of a hate-motivated crime was not adjudged in the 2006 trial and was neither appealed nor decided by this Court. The passage in question, quoted by the Shahis and the trial court, references the hate crimes statute, but in context was used only to support our affirmation of the punitive damages award, specifically that the record provided sufficient evidence that Madden had intentionally and maliciously attacked the Shahis with actions akin to a crime. See *Fly Fish Vt., Inc. v. Chapin Hill Estates, Inc.*, 2010 VT 33, ¶ 22, 187 Vt. 541, 996 A.2d 1167 (noting necessity of finding "outrageous misconduct" or "demonstrable malice" to uphold punitive damages and citing *Shahi I*). In reference to Madden's contention that punitive damages were inappropriate because his actions were against the Shahis' property and not their persons, we said:

> [D]efendant's actions were directed against plaintiffs. The record supports a finding that defendant waged a campaign of terror against plaintiffs motivated in part by sectarian and racial bias. Such actions are among the most invidious and reprehensible known to our society — in Vermont, they are subject to criminal sanction, see 13 V.S.A. § 1455 (providing for sentence enhancements for crimes motivated by victim's actual or perceived race, religion or national origin) — and as such certainly support punitive-damages awards.

*Shahi I*, 2008 VT 25, ¶ 26. Regardless of the actual import of the passage, this dictum could not take the place of the physical or testimonial evidence required for the imposition of an injunction. See *State v. Oney*, 2009 VT 116, ¶ 13 n.6, 187 Vt. 56, 989 A.2d 995 (declining to make findings of fact at appellate level); *State v.*

*Vargas*, 2009 VT 31, ¶ 18, 185 Vt. 629, 971 A.2d 665 (mem.) ("It is not [this Court's] role . . . to act as a fact-finder."); *N. Sec. Ins. Co. v. Perron*, 172 Vt. 204, 218 n.10, 777 A.2d 151, 161 n.10 (2001) (remanding case for further factual findings, though record may have supported plaintiff's contention, because "[w]e will not engage in appellate fact finding"). Indeed, the quoted passage could not serve as an affirmation of the sufficiency of the evidence of a hate-motivated crime because no such issue was before this Court. See *In re Estate of Kurrelmeyer*, 2010 VT 20, ¶ 12, 187 Vt. 620, 992 A.2d 316 (mem.) (noting Court will avoid issuing advisory opinions and citing *In re Constitutionality of House Bill 88*, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949)).

 ¶ 18. The same logic applies to the trial court's reliance on the 2006 jury award. Though the same judge sat at both the jury trial and the injunction hearing, that happenstance of scheduling cannot convert an award of money damages in a tort case into a finding of hate-motivated crime for purposes of granting injunctive relief. The 2006 trial was before a jury, not a bench trial; thus, it was for the jury to assess witness credibility. Shahi specifically objected to the issue of equitable remedies being raised at trial, stating there was "no overlap" between the tort claims before the jury and the plea for an injunction. Though the punitive damages the jury awarded the Shahis indicate the jury found malicious intent behind Madden's actions, there was never an express finding that such malice was specifically motivated by the Shahis' ethnicity or perceived religion. Even if there was evidence of such a motive at trial, because the court and the Shahis decided to withhold a determination of hate-motivated crime liability from the jury, the jury never weighed in on this issue. Moreover, there is no indication that the trial judge was concurrently taking evidence on the equitable issue during the civil suit in 2006. In granting the injunction, he expressly relied not on his own impression of witnesses from the trial two and a half years previous, but rather on "the jury verdict." Therefore, while the trial court could have relied on that verdict to show Madden had committed wrongful acts that injured the Shahis, it could not go further and find such acts were hate-motivated.[3]

---

[3] To the extent the Shahis argue that the trial court could rely on evidence presented during the 2006 trial to show Madden had a prohibited bias against them, we fail to find sufficient connection between that evidence and the specific

¶ 19. Unable to rely on either the language from *Shahi I* or the jury's findings in 2006, we are left to assess the evidence introduced at the hearing in January 2009 as the sole support to meet the requirements for imposing a hate-motivated crime injunction. Taken in the light most favorable to the Shahis, the evidence before the trial court could have established that in 2006 Madden had owned a gun and had threatened to kill Shahi or attempted to contract for his killing. This, along with the jury verdict and Shahi's testimony about his family's ongoing fears, support a finding that Madden harmed the Shahis. See 13 V.S.A. § 1458 (defining "damage" from "hate-motivated crime" to include "the receipt of threats of violence" including "verbal, electronic or written communication, or course of conduct, or a combination thereof, which causes reasonable fear of injury to the complainant or the complainant's property").

¶ 20. Turning to the required nexus between the harmful acts and prohibited discriminatory animus, we find no support. The one reference to any racial bias in all of the testimony at the hearing came when one witness admitted to referring to Shahi as a "towel head," but denied that Madden had ever done so. Though the credibility of this witness was damaged due to his apparent friendship and conversations with Madden, absent any additional evidence of hate motivation, the trial court's finding of a hate crime cannot stand solely on this basis. And while there was testimony at the original jury trial regarding Madden's discriminatory bias toward the Shahis, such evidence was not submitted in this proceeding and was not relied upon by the trial court in granting the injunction.

¶ 21. Of equal import to the injunction at hand was the lack of a finding of immediate need linking Madden's actions in 2004 with the equitable relief sought nearly four years later. Though the trial court noted that Madden's threat to kill Shahi "occurred after the jury verdict," even this was at least eighteen months before the Shahis sought relief under the hate crimes statute. There is no question that the Shahis had appropriate grounds for a civil injunction in 2004 based on Madden's acts — even without showing a hate motivation — and possibly again based on his threat in 2006. However, at the 2009 hearing they failed to provide

threats underlying the injunction at issue. Nor do we believe the trial court indicated such a connection in its findings.

evidence of discriminatory animus or necessary immediacy. Accordingly, the trial court lacked evidence showing a timely connection between any wrongful misconduct established at the hearing, or through the jury verdict, and any prohibited animus. The absence of this required nexus necessitates a remand to the trial court for additional evidence or further proceedings. This result in no way limits the Shahis' ability to either supply the required evidence or request another type of civil injunction.

¶ 22. Irrespective of the need for a remand, appellants claim that any civil application of the hate crimes statute is unconstitutional as it operates as a criminal statute while only requiring defendant to be found liable by a preponderance of the evidence. 13 V.S.A. § 1461. Vermont's hate crimes law has faced a constitutional challenge in the past, and here, again, we find no fatal infirmity with the statutory structure on the grounds appellants put forth. See *State v. Ladue*, 160 Vt. 630, 631 A.2d 236 (1993) (mem.) (upholding criminal enhancement provision of hate crimes statute). Rather than imposing a "criminal sanction," as appellants suggest, the statute's relief is equitable in nature and provides protection for persons and property through injunctive relief. See 13 V.S.A. § 1457 (civil relief including "injunctive relief, compensatory and punitive damages, costs and reasonable attorneys fees" available "[i]ndependent of any criminal prosecution or the result thereof"). It does not necessarily expose a defendant to incarceration or require a heightened burden of proof. Cf. *Donley v. Donley*, 165 Vt. 619, 620, 686 A.2d 943, 945 (1996) (mem.) (upholding restraining order on finding of assault under preponderance standard when defendant adjudged innocent of same assault under beyond-reasonable-doubt standard).

¶ 23. For similar reasons, we are unmoved by appellants' suggestion that the possible imposition of criminal sanctions for violation of a hate-motivated crime injunction or the branding of a defendant as a "hate criminal" without a jury determination mandate striking down the law or voiding the injunction. Violation of any court-ordered injunction can expose a defendant to fines or incarceration for contempt, and such a possibility does not transform the injunction itself into a criminal sanction. See 13 V.S.A. § 1464(a) (authorizing enforcement of hate crimes orders by police officers, including "making an arrest"); 12 V.S.A. § 122 ("[C]ontempt proceedings may be instituted against" a party who "vio-

lates an order made against him."); 12 V.S.A. § 123 (permitting imprisonment for civil contempt). Likewise, the claimed necessity of a jury trial is without merit in this context. See *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 158, 624 A.2d 1122, 1126-27 (1992) (dismissing claim for jury trial where relief sought was equitable, not legal damages).

¶ 24. Having confirmed the validity of the statute and explained the necessity of a remand in this case, we need not address the balance of the parties' arguments.

*Reversed and remanded.*