*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-166

DECEMBER TERM, 2013

| | |
|---|---|
| Stacey Hoechner | } APPEALED FROM: |
| | } |
| | } Superior Court, Chittenden Unit, |
| v. | } Family Division |
| | } |
| | } |
| Ernest C. Hoechner | } DOCKET NO. 863-10-11 Cndm |

Trial Judge: Linda Levitt

In the above-entitled cause, the Clerk will enter:

Husband appeals from the trial court's final divorce order. He argues that the court erred in its property division and spousal maintenance awards. We reverse and remand.

The parties separated in September 2011 after a seventeen-year marriage. Parental rights and responsibilities, property division, and spousal maintenance were all contested at the final hearing. The parties owned six properties directly or through one of several businesses. At the final hearing, they agreed to the following valuations of their real property:

Marital residence: $633,121 (net of mortgage)
Jay Peak Condo #1: $83,769 (net of mortgage)
Jay Peak Condo #2: $435,000 (unencumbered)
Bakersfield Camp: $275,000 (unencumbered)
Hinesburg property used by the towing company: $475,000

Although both parties said that they agreed concerning their sixth property, at 907 Shelburne Road, the exhibits they submitted at trial reflect different net valuations of this property. Wife's exhibit shows a $530,000 value for the property with no encumbrance. Husband's exhibit shows the same value, but reflects a lien of $54,967, yielding a net value of $475,033.

At the final hearing, both parties essentially argued for an equal property division, and with one exception, they argued for the same distribution of the respective real properties.[1] However, they assigned dramatically different values to the assets of the businesses that did not own real property. (The parties treated the value of those two businesses as equal to the value of their assets.) In particular, wife testified that the value of the assets of these businesses was about $2.7 million. Husband valued the same assets at around $600,000. As a consequence,

---

[1] They both agreed that the second Jay Peak condominium should be sold, but did not agree about distribution of the proceeds of that sale nor about the ramifications of the very substantial capital gains tax that would be triggered by the sale.

they had different perspectives about whether and how much husband would have to pay wife to effect a roughly equal property division given that the various businesses would stay in his column.

The trial court made the following findings. Both parties are in their mid-forties and in good health. Husband's work provided the main source of family income. He ran a number of businesses, including a towing company, a U-Haul rental company, a motel, a gas station and a garage. He worked long hours and his businesses generated annual revenue of over $3,200,000. Husband's 2012 income, for the purpose of maintenance and income equalization, was $170,000. This figure is actually a low estimate, the trial court found, because husband's businesses paid many of the family's personal expenses, such as vehicle expenses, a home equity loan, and the overhead for a vacation condominium, among other expenses.

Wife has been the primary care provider for the parties' five children. Wife worked part-time as a bookkeeper for the businesses during the marriage, and currently works twenty-five hours per week at a car dealership, earning $11 per hour. The parties enjoyed a comfortable lifestyle during the marriage. They traveled and owned multiple homes. When the parties lived together, their monthly expenses were approximately $22,000. These expenses were paid either by the parties or by husband's businesses. Many of the expenses involved the parties' four homes and their recreational activities.

The trial court assigned the following values to the parties' real property:

Marital residence: $633,121
Jay Peak Condo #1: $83,769
Jay Peak Condo #2: $435,000
Bakersfield Camp: $275,000
Hinesburg property used by the towing company: $475,000[2]
Motel: $475,033
Gas station on Shelburne Road: $530,000

The court found the value of the businesses' other assets, including multiple tow trucks, tractor-trailer, lifts, service trucks, wood chipper, mower and other equipment to be $2,500,000. The court expressly rejected husband's proposed valuation of these assets at $600,000 as not credible.

The court also listed the parties' other assets, including retirement accounts; close to one hundred guns; a motor home of unknown value; two boats valued at $103,000; and numerous vehicles, motorcycles, ATV's and snowmobiles. Additionally, the court found that in 2011, wife saw an estimated $250,000 in cash in four safes in husband's possession.

The court awarded wife the marital home; the two Jay Peak condominiums; her vehicles; a motorcycle; the motor home, snow machines, and other recreational vehicles; one-half of the cash in the safes; one half of the guns; and an equalized share of the retirement accounts. The court awarded husband his businesses; business assets; the Bakersfield camp; his vehicle,

---

[2] The trial court's order says, "The towing company in Hinesburg is valued at $475,000," but based on the evidence and context, it is clear that the trial court was referring to the value of the real property, not owned by the towing company, that was used for some towing company business.

motorcycles, snow machines, boats, ATV's, and other recreational vehicles; one half of the cash in the safes; one half of the guns; and an equalized share of the retirement accounts. The court explained that because of the value of the businesses, husband was awarded assets valued higher than those awarded to wife. To compensate for the difference, the court ordered husband to pay wife $1.25 million, payable by a ten-year note at an interest rate of three percent, to be paid in equal monthly installments.

The court also ordered husband to pay spousal maintenance to wife of $7,100 per month for fifteen years. The court explained that its spousal maintenance award was, in part, in lieu of property division.[3] Without these awards, the court explained, wife would be unable to meet her reasonable needs, accrue sufficient financial resources, or maintain the lifestyle she had during the parties' long-term marriage. Husband filed a motion to reconsider, which the court denied in all material respects. This appeal followed.

The trial court has broad discretion in dividing marital property, and we will uphold its decision unless its discretion was abused, withheld, or exercised on clearly untenable grounds. Scott v. Scott, 155 Vt. 465, 471-72 (1990). The party claiming an abuse of discretion bears the burden of showing that the trial court failed to carry out its duties. Field v. Field, 139 Vt. 242, 244 (1981). We have noted that the distribution of property is not an exact science and, therefore, all that is required is that the distribution be equitable. Lalumiere v. Lalumiere, 149 Vt. 469, 471 (1988).

Husband first argues that the trial court improperly listed the same real property twice in its list of properties to be distributed. In particular, the trial court found that "the gas station on Shelburne Road is valued at $530,000" and that "the motel is valued at $475,033." The only evidence in the record is that the gas station on Shelburne road is leased. Although the gas station business is next to the motel on Shelburne Road, it is on leased property, and the gas station property is not a distinct property to be valued and distributed in this divorce. Neither party suggested otherwise, and neither party included the gas station on its list of real property. The trial court may have been confused by the fact that husband assigned a net value of $475,033 to the 907 Shelburne Road property, identified on his exhibit with the motel, whereas wife assigned a value of $530,000 to this property, identified by address without further description. A review of the record confirms that there is only one property in the marital estate on Shelburne Road. Accordingly, we must remand for a determination by the trial court of 1) the net value associated with that property; and 2) the impact of this correction on the overall property distribution.

Husband next argues that the court erred by failing to specify who would be responsible for the mortgages associated with the marital home, one of the Jay Peak condominiums, and the motel. He maintains that clear findings on this issue were especially important because at trial, wife sought to be awarded certain property free and clear of any mortgages. We conclude that the court's intent is evident from its decision. The court was mindful of the debt associated with the properties, because it used their net values in its list of asset values. Although we agree that

---

[3] The trial court's actual words were: "The maintenance, in part, constitutes a property distribution." Because spousal maintenance and property distribution are distinct we understand the trial court's statement to mean that the trial court was awarding greater spousal maintenance than it might have otherwise in recognition of an unequal property division. See 15 V.S.A. § 752(a)(1).

the better course would have been to expressly specify which party is responsible for each mortgage, and to expressly address the question of refinancing, the only reasonable construction of the court's opinion in this case is that the party awarded title to the property is also responsible for the debt associated with that property. The fact that wife sought a different result doesn't change our analysis. Wife proposed at trial that one of the Jay Peak condominiums be sold and that the funds from this sale be used to pay off the mortgage on the marital home and the mortgage on the other Jay Peak condominium, with any remaining money from the sale being awarded to her. The court rejected this approach as it awarded both Jay Peak condominiums to wife. The remand in this case will provide the trial court an opportunity to make explicit what we find implicit in its order, and to address the question of whether wife should be required to refinance the marital residence and the first Jay Peak condominium to relieve husband of his obligation on those mortgages.[4]

Husband next argues that the court erred in relying on wife's testimony as to the value of the business assets because wife's testimony lacked credibility, foundation, and supporting evidence. To the extent wife was relying on balance sheet valuations of equipment, such figures did not reflect the actual market value of the equipment. Husband characterizes his own testimony as "accurate, detailed, and credible," and argues that the trial court's findings provided no explanation to support its valuation of the business assets.

In order to evaluate husband's claim, we review the evidence concerning the value of the various business assets. Wife testified at trial that the towing recovery business, which had a U-Haul rental facility and auto and truck repair shop, and which tows heavy-duty equipment like trucks, owned equipment worth approximately $2.5 million. This equipment included a 60-ton rotator, other big trucks, as well as car lifts within the repair shop. As to the Shelburne Road gas station, wife indicated that that this business owned approximately $200,000 worth of equipment. Wife did not explain the basis for her figures. Wife testified that she did the bookkeeping for these businesses, and that husband provided her with information about the businesses' inventory at the end of each year.

For his part, husband offered no testimony at all concerning the value of these assets during his initial testimony. He did list some of the assets in play: three heavy wreckers, one medium wrecker, two flatbeds, two road-service trucks, a small wrecker, and a lift. He said that

---

[4] Husband also argues that the trial court erred in failing to consider the very substantial capital gain to him occasioned by the ordered transfer of the second Jay Peak condominium from one of his businesses to wife. At trial, both parties contemplated the sale of the property, although they differed with respect to the disposition of the proceeds of that sale. They did both agree that the proceeds from any sale of that condominium should be applied to his capital gain liability arising from such a sale. Husband did not offer any evidence as to the magnitude of the tax liability. Because the trial court did not actually order a sale, but instead awarded the property to wife, it did not address the capital gain implications of a sale. Nor did it contemplate or address the capital gains ramifications of the ordered transfer of the property. On remand, the trial court should take evidence concerning the capital gain liability, if any, occasioned by its order that the second Jay Peak condominium be transferred to wife (as opposed to a hypothetical sale to a third party). Although the trial court has broad discretion with respect to whether and how to account for unavoidable and substantial tax consequences arising from its orders, it cannot decline to exercise that discretion altogether. See Towne v. Towne, 150 Vt. 286, 289 (1988) ("An abuse of discretion will be found only if the trial court fails to exercise its discretion, or exercises it for clearly untenable reasons or to an untenable extent." (quotation omitted)).

4

some of the equipment dated to the mid-1990s, and he bought some as recently as 2011. He did not provide more specific testimony about the purchase prices, ages, or condition of any of the items in question. After husband finished his testimony, prompted by opposing counsel's argument to the court, husband's counsel re-called husband and asked him what he thought the equipment was worth considering its age and its use. He replied,

> "I'm sure you're going to laugh, but 600-$700,000. You know, if you had to put it up for sale, maybe, with the right people buying it. I understand what was spent on it new, but the value goes away on these things when it's time to resell it. I mean, it's – it's big equipment. When it's – when it gets tired, it's tired; there's – I don't know how to explain it anymore."

Husband also testified that one item—a new Mack truck—was subject to a $128,000 loan, and reiterated that big equipment loses its value quickly.

On cross-examination, husband acknowledged that the balance sheets for his businesses reflected more than $2.7 million in property and equipment, but he later clarified that he had accumulated depreciation of $2.5 million, and that the $2.7 million figure represented the original purchase prices of the equipment. With reference to a chipper, husband testified that he works hard to keep his equipment in good condition, and he would hope to sell it for what he put into it. He did not agree that this would apply to the other pieces of equipment. With reference to a bulldozer that he bought for between $20,000 and $24,000, husband could not say what he would put it on the market for without first talking to someone to "get a barometer."

Neither party presented expert testimony. Neither party purported to support his or her valuation with any informal or formal market research. Neither party purported to itemize the major pieces of equipment and the values assigned to them, or to break down the components of the lump sum figure each assigned to the collective. It is difficult to understand why the parties would have presented so little evidence concerning such a substantial collection of assets, especially given that the divergent valuations were at the crux of the property division issues. The evidence before the trial court favoring wife's position essentially consisted of 1) wife's bald assertion as to the equipment's collective value, 2) financial statements that reflected that, at a minimum, the collective price of the various pieces of equipment when each was purchased exceeded $2.7 million, and 3) husband's testimony that he works hard to take care of his equipment so that it holds its value. The evidence favoring husband's position included 1) husband's bald assertion as to the equipment's value, 2) husband's testimony as to one modest lien, and 3) husband's generalized testimony that the actual value of the pieces of equipment in question had diminished over time.

We conclude that wife's bare assertion is insufficient to support the trial court's valuation of the businesses' non-real property assets at $2.5 million—by far the biggest line-item in the property division analysis. Although wife's status as the bookkeeper may have qualified her to testify on the subject, she provided no foundation or basis for the valuation she offered. She literally just offered a number.[5] The business balance sheets provide little, if any meaningful support for wife's figure, as they apparently reflect the collective undepreciated purchase price of all of the businesses' equipment, without regard to the age of the equipment, the condition of the

---

[5] Although wife testified to an asset value of $2.7 million, in her requests to find, she asks the court to find a total non-real property asset value of $1.3 million.

equipment, the market for used equipment, or whether the equipment is even still operable. Husband, likewise, offered a single figure and a relatively unexplained opinion. Although he invokes his ownership of the businesses and his experience in the trade, he made no effort to break down his figure, provide market values for any of the items in question, or explain how he arrived at his $600,000 figure. Given the significance of this class of assets to the overall property division in this case, and the enormous gap between the parties' respective figures (their valuations differed by over $2 million), we remand this issue for further evidence and factfinding by the trial court. Shahi v. Madden, 2010 VT 56, ¶ 1, 188 Vt. 142 (reversing and remanding for submission of additional evidence or additional proceedings where trial court lacked a sufficient evidentiary foundation for its decision).

Husband next asserts that in ordering him to pay wife $1.25 million on a ten-year note, the court failed to consider his ability to pay. He argues that the sum of his monthly obligations, considering his spousal maintenance obligation and his obligation on the note, will exceed his monthly income as found by the court, and that the court must consider his ability to pay. See Cleary v. Cleary, 134 Vt. 181, 183 (1976) (support and alimony award that left obligor husband with essentially no monthly income appeared to be inequitable). To the extent that the order will require him to liquidate assets, husband argues that the court erred in failing to consider the tax consequences he would have to face having to liquidate assets to meet these obligations.

We question the premise of husband's argument. To support his argument that he cannot meet his monthly obligations, husband relies on an annual salary of $170,000. Although this is the figure the court used for the purpose of calculating spousal maintenance, the court also expressly found this to be a low estimate of husband's true income given all of the personal expenses paid for by the businesses. Moreover, husband fails to recognize that the monthly obligation on the long term note results from the trial court's willingness to allow him to satisfy his obligation in connection with the property division over a ten year period, rather than doing so immediately by liquidating income-producing assets. Husband can always avoid the ongoing monthly principal payments and modest debt service by liquidating his considerable assets to effectuate the equitable property division. Likewise, nothing precludes him from borrowing against those largely unencumbered assets to meet his obligations. Although the trial court's property division is itself in question and subject to redetermination on remand as set forth above, and thus husband's monthly obligation on a long term note, if any, may change as a result of further proceedings, we cannot agree that where a court authorizes satisfaction of a property division obligation over a period of time, it must ensure that the obligor party can make the required payments toward property division from current income. Husband's argument conflates property division and ongoing support.[6]

Finally, husband challenges the trial court's spousal maintenance award arguing that the court improperly disregarded the parties' agreement, abused its discretion in failing to impute income to wife, and abused it discretion in over-equalizing spousal maintenance. We find no

---

[6] Husband also argues that the trial court failed to consider the tax ramification of his sale of assets to comply with the property division order. In contrast to the tax ramifications of the transfer of the Jay Peak condominium—an issue raised by the evidence presented below— the tax consequences of a hypothetical sale of any other of husband's assets, whether real property or personal property of the businesses, were not the subject of testimony in the trial below. We cannot find error in the trial court's failure to address arguments never made below and evidence never offered below.

error in the spousal maintenance award. The court has broad discretion in determining the duration and amount of maintenance once it finds grounds for such an award. Chaker v. Chaker, 155 Vt. 20, 25 (1990). Its award will be set aside only if there is no reasonable basis to support it. Id. The court provided reasonable grounds for its decision here.

With respect to the first argument, we cannot conclude that the parties had any kind of meaningful agreement which the court ignored. They did not file a stipulation as to spousal maintenance. During the hearing, wife requested spousal maintenance for nine years. Subsequently, counsel for both parties talked generally about income-equalization, and appeared to agree at one point on a methodology for calculating spousal maintenance in the first instance, but they never followed up on the trial court's request that they submit some agreed-upon language. Instead, in their respective requests to find they made very different requests: husband requested an order that he pay $5,883 per month for nine years, subject to decrease if husband's income drops, but no increase if it rises, and wife requested twenty years of support at $7,083 per month with a yearly adjustment for inflation. Although the parties invoked their "agreement" to various matters throughout the hearing, we find nothing in the record that establishes an agreement as to the amount and duration of spousal maintenance.

With respect to the argument that the trial court should have imputed income to wife, we cannot discern whether the trial court imputed any income to wife for purposes of calculating spousal maintenance, or whether it even considered her actual earned income as reflected in the trial court's findings. The trial court's spousal maintenance award of $7,100 per month is consistent with an income-equalization order that does not impute income to wife or take into account her actual earnings, found by the court to be based on twenty-five hours per week earning $11 per hour.[7] However, the court made it clear in its order that it was not merely ordering spousal maintenance with the goal of equalizing the parties' incomes for a period; it expressly indicated that its order took into account the disparate property division favoring husband. Insofar as we are remanding for a redetermination of the property division, and given that the trial court indicated that its spousal maintenance award takes into account the disparate resources available to the parties as a result of the property division, the trial court should revisit its spousal maintenance award on remand. We note that to the extent that husband argues that the trial court abused its discretion in not imputing to wife earnings in excess of her actual earnings on the ground that she only works part time, we cannot agree that on this record refusing to impute additional income to the primary custodial parent who is already working twenty-five hours per week constitutes an abuse of discretion. See Begins v. Begins, 168 Vt. 298, 304-05 (no abuse of discretion where trial court declined to impute raise to husband where there was no evidence that husband had declined the raise in derogation of the rights of his spouse or child).

Finally, we reject father's argument that the trial court abused its discretion in "over-equalizing" the spousal maintenance. The trial court explained that its spousal maintenance award took into account a disparate property division, and specifically found that without the spousal maintenance award wife would be unable to meet her reasonable needs, accrue sufficient financial resources, or maintain the lifestyle she had during the parties' long-term marriage. To the extent that the trial court will be revisiting its property division on remand, and insofar as it expressly indicated that it adjusted its spousal maintenance award to reflect the disparate

---

[7] The income-equalizing figure assuming husband's income of $170,000 would actually be $7,083 per month—just shy of the $7,100 ordered by the trial court.

property division, the trial court should revisit the spousal maintenance award on remand in light of its changes to the property distribution.

We remand for redetermination of the property division and spousal maintenance awards with specific consideration of 1) the valuation of the real property at 907 Shelburne Road and the initial double-counting of the real estate at 907 Shelburne Road; 2) the question of whether wife shall be required to refinance the debt on the properties transferred to her in order to relieve husband of his obligations on those mortgages; 3) the value of the non-real property assets of husband's businesses; and 4) the impact of any changes in the property division on the court's spousal maintenance award.

Reversed and remanded.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Beth Robinson, Associate Justice

_____
Geoffrey W. Crawford, Associate Justice