2008 VT 28

**COLD BROOK FIRE DISTRICT v. Christopher W. ADAMS and Lesley A. Adams**

[950 A.2d 1206]

No. 07-033

*Wesley,* J.

¶ 1. March 20, 2008. Plaintiff Cold Brook Fire District appeals from summary judgment. The trial court ruled that the pasturing of horses by defendants, Christopher and Lesley Adams, within 200 feet of two public water supply wells owned by plaintiff did not violate a restrictive covenant limiting defendants' use of their land. We reverse.

¶ 2. The following facts are not disputed. On June 11, 2004, defendants pur-chased thirty-three acres of land in Wilmington, Vermont, from James McGovern, III. At the time of the purchase, the parcel was burdened by a restrictive covenant in favor of plaintiff, which owns two public water supply wells on the parcel. To comply with Vermont Department of Health (DOH) standards, the covenant requires that there be no "construction or land use activity" within 200 feet of the wells unless the DOH first provides written approval. Defendants, after purchasing the parcel, and without receiving approval, pastured horses within 200 feet of the wells.

¶ 3. Plaintiff filed a complaint in August 2005, requesting that the Windham Superior Court enjoin defendants from pasturing or allowing any animal access within 200 feet of the wells. Defendants filed their answer asserting several affirmative defenses, including estoppel. Thereafter, the trial court issued an entry order in which it stated that the legal issue in the case turned on the meaning of "land use" in the restrictive covenant and requested that the parties identify the applicable DOH regulations through additional briefing. Both plaintiff and defendants agreed that the relevant regulation could be found in the "Sanitary Engineering" section of the Vermont Health Regulations. Vermont Health Regulations, chapter 5, subchapter 10, part I, § 5-906(a)(3) (effective June 15, 1970).[1] Relying on the regulation provided, the superior court held that the covenant restricted only land uses which include sewer, septic, and subsurface disposal systems, and granted summary judgment in favor of defendants.

¶ 4. As an initial matter, we hold that the superior court relied on the wrong regulation in defining the term "land use activity" in the restrictive covenant. According to the amicus brief filed by the

---

[1] This regulation – in force at the time the covenant was created – is no longer in effect.

Vermont Agency of Natural Resources (ANR), the parties incorrectly identified § 5-906(a)(3), which pertains specifically to the sanitary protection of waters in and about land subdivisions and, therefore, has no application in the present case. See Vermont Health Regulations, § 5-901. Instead, the State asserts that the Public Community Water Supply Standards provide proper guidance in the present case. Public Community Water Supply Standards, part 3, § 3.3.2.2 (effective May 27, 1988). We agree. When construing a term in a restrictive covenant, our precedent directs that we give effect to the intent of the parties as "gathered from the language used . . . and in reference to [] the subject matter and purpose sought to be accomplished at the time the instrument was executed." *Creed v. Clogston*, 2004 VT 34, ¶ 17, 176 Vt. 436, 852 A.2d 577. The subject matter of the restrictive covenant at issue is plaintiff's community water system. See Vermont Health Regulations, chapter 5, subchapter 12, § 1.17 (last amended March 17, 1980) (noting a "community water system" to be a system which regularly serves twenty-five or more year-round residents);[2] see also 10 V.S.A. § 1671 (providing an analogous definition of "community water system"). The State asserts that such systems were governed by the Public Community Water Supply Standards in 1988. Furthermore, plaintiff created the restrictive covenant in accordance with the Public Community Water Supply Standards and intended the covenant to serve as the legal document that would enable final source approval for its community water system. See Public Community Water Supply Standards, § 3.3.2.2(D) (requiring

proof of legal control of land use activities within the well isolation zone prior to source approval). Like the Public Community Water Supply Standards, the covenant created a default 200-foot isolation zone around wells and reserved certain approval authority for permitting "land use" activities within isolation zones. See *id.* § 3.3.2.2, 3.3.2.2(C)(1)(e). Therefore, because it was the intent of plaintiff to comply with the Public Community Water Supply Standards at the time the covenant was created in 1988, the superior court erred when it did not apply those standards in determining the scope of the term "land use activity" in the present case.

¶ 5. We further hold that, under the applicable Public Community Water Supply Standards, the pasturing of horses is a "land use activity" and is, therefore, not permitted without prior written approval from the ANR Water Supply Division.[3] The Public Community Water Supply Standards employed a broad definition of "land uses," which included "any . . . activity which may contaminate the water supply." *Id.* § 3.3.2.2(C)(2)(h). The ANR argues that the concurrence of plaintiff's shallow, gravel wells that are susceptible to contaminant infiltration and the contaminants present in horse manure create a sufficient threat to plaintiff's water system. Whether the threat is real must be

---

[2] The language of the cited regulation, which is no longer in effect, is currently codified in the Environmental Protection Rules. See Water Supply Rule § 2.2, Code of Vermont Rules 12 030 003 (effective Sept. 24, 1992).

[3] In 1991, jurisdiction over public community water supply systems and sources transferred from the Vermont Department of Health to the Agency of Natural Resources, Water Supply Division. The current applicable regulations can be found in the Environmental Protection Rules, chapter 21, Water Supply Rule, subchapter 2, appendix A, part 3, § 3.3.1.2(e)(2), effective date September 24, 1992. Subchapter 2 provides essentially the same definitions employed by the Public Community Water Supply Standards.

decided by the Water Supply Division in the first instance, but the potential for contamination is sufficient to require defendants to seek permission for their horse pasturing activities under the terms of the covenant.

¶ 6. Finally, the trial court did not err when it ruled that plaintiff was not estopped from enforcing the terms of the restrictive covenant against defendants. To find estoppel, our precedent requires: (1) the party to be estopped must know the facts; (2) the party being estopped must intend that his conduct shall be acted upon or the acts must be such that the party asserting estoppel has a right to believe that it is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely to his or her detriment on the estopped party's former conduct. *In re Griffin*, 2006 VT 75, ¶ 18, 180 Vt. 589, 904 A.2d 1217 (mem.). We review a trial court's conclusions of law de novo and will uphold such conclusions only when they are reasonably supported by the court's findings of fact. *Clayton v. Clayton Investments, Inc.*, 2007 VT 38A, ¶ 9, 182 Vt. 541, 929 A.2d 713 (mem.) (citing *Luneau v. Peerless Ins. Co.*, 170 Vt. 442, 444-45, 750 A.2d 1031, 1033 (2000)).

¶ 7. We will apply estoppel against a government entity, such as plaintiff, only in rare cases. *Griffin*, 2006 VT 75, ¶ 18 (estoppel is to be applied against the government "when the elements of estoppel are met and the injustice that would result from denying the estoppel outweighs the negative impact on public policy that would result from applying estoppel"). In the present case, the record shows that James McGovern, III, was the Chairman of the Prudential Committee for plaintiff at the time he conveyed his property to defendants. Prior to the conveyance, McGovern represented to defendants that he had pastured a herd of domesticated deer within 200 feet of the wells since 1993 and that, during that time, plaintiff had not required him to secure written approval for such activities. Despite his representation, however, the facts do not show that McGovern was at any point acting in an official capacity for plaintiff in the course of his dealings with defendants or that he had any intent to bind plaintiff from enforcing the restrictive covenant in the future. Because the record reasonably supports the trial court's conclusion that the requirements for estoppel were not sufficiently met, we affirm the denial of defendants' estoppel claim.

*Reversed.*