2010 VT 43

**Frank HUARD and Karen Huard v. Michael HENRY, Melinda Henry, Joel Prive and Lisa Prive**

[999 A.2d 1264]

No. 09-246

¶ 1. May 19, 2010. This action stems from a long-standing and much-litigated dispute between neighbors over maintenance of a community septic system. Following the trial court's grant of injunctive relief in favor of plaintiffs, plaintiffs appeal from the trial court's denial of their post-judgment motion to amend the terms of the injunction and the court's calculation of attorney's fees. We affirm.

¶ 2. The parties are residents of a subdivision in Morristown. According to covenants set forth by the subdivision developer, "inspection, maintenance, repair and replacement of any . . . equipment" related to the community septic system is the responsibility of "all lots having a beneficial use of that system." The lots having beneficial use of the septic system include lots owned by plaintiffs and defendants. Plaintiffs brought the original action for breach of contract, nuisance, and injunctive relief in 2005, claiming that defendants had breached their duty to maintain and repair the septic system, resulting in noxious fumes and effluent that interfered with plaintiffs' use and enjoyment of their property.

¶ 3. A bench trial was held on plaintiffs' claims in August 2007, at the conclusion of which defendants moved for judgment as a matter of law. The court granted defendants' motion from the bench, concluding that plaintiffs had not established that defendants' actions "constitute[d] an unreasonable interference with [plaintiffs'] right to continue to use . . . their property." With regard to plaintiffs' breach-of-contract claim, the court found that "the

evidence presented in the plaintiffs' case does in fact establish that there are some defects and some noncompliance with the plan specifications . . . of the applicable covenants." The court, however, concluded that because plaintiffs had not established that they suffered any direct damages as a result of this noncompliance, defendants were also entitled to judgment as a matter of law on the breach of contract claim. The court failed to consider plaintiffs' argument that injunctive relief was necessary. Plaintiffs appealed the decision to this Court, and we issued an opinion in May 2008. *Huard v. Henry (Huard I)*, No. 2007-417, 2008 WL 2781189 (May Term 2008) (unpub. mem.). In that opinion, we affirmed the trial court's dismissal of the nuisance and breach-of-contract claims, but remanded the case to the trial court for consideration of plaintiffs' request for injunctive relief. *Id.* at *3.

¶ 4. On remand, the trial court addressed plaintiffs' request "for an injunction to require and compel Defendants to perform and abide by all pertinent provisions of the deeded covenants, and/or applicable State permits, concerning the Defendants' shared sewage disposal system located (via deeded easement) on Plaintiffs' property." The court reiterated that, based on the evidence presented at trial, defendants were "to some extent not in compliance with the letter of the permit and/or covenant conditions." Thus, the court issued an injunction requiring defendants to comply with the subdivision covenant, including compliance with the current wastewater permit, with regard to maintenance of the community sewer system.

¶ 5. Following this amended final order granting them injunctive relief, plaintiffs moved to amend the injunction to require defendants to comply with the permit in effect at the time the covenants were imposed rather than any amended permit. Plaintiffs also moved for attorney's

fees pursuant to a covenant provision allowing recovery of attorney's fees incurred as a result of an owner's enforcement of another covenant. The court denied the motion to amend the injunction and granted the motion for attorney's fees. The court, however, disagreed with the amount of hours plaintiffs' attorneys claimed were necessary to the litigation and reduced the hours claimed by two of plaintiffs' three attorneys in its lodestar calculation. After calculating the lodestar amount, the court then reduced the total by one-third, because "the ultimate 'results achieved' were minimal and arguably could, and would have been obtained solely by pursuing the related, and much less expensive permit amendment proceedings" and because the court perceived the suit to be motivated by "retributive" intent. This appeal followed.

¶ 6. On appeal plaintiffs make three arguments: (1) the trial court erred in denying plaintiffs' motion to amend the injunction by misconstruing the relevant covenant provision and improperly considering the existence of a state wastewater permit amendment not introduced into evidence; (2) the trial court abused its discretion in reducing the award of costs and attorney's fees and in doing so relied on prior litigation between the parties not introduced as evidence; and (3) the trial judge erred in failing to recuse himself.[1]

---

[1] We note that we do not address defendants' cross-appeal as it was dismissed as untimely filed. See *Huddleston v. Univ. of Vt.*, 168 Vt. 249, 255, 719 A.2d 415, 419 (1998) (concluding that party who failed to timely cross-appeal a trial court ruling could not raise contested issues to this Court); *Staruski v. Cont'l Tel. Co. of Vt.*, 154 Vt. 568, 571 n.3, 581 A.2d 266, 267 n.3 (1990) (noting that where both parties seek to appeal non-de novo lower court decision, failure to cross-appeal leaves nonfiling party without remedy if first party's appeal is dismissed).

## I.

¶ 7. Plaintiffs first argue that the trial court erred in denying plaintiffs' motion to amend the injunction issued on May 19, 2008. On remand from this Court, the trial court duly considered whether injunctive relief was appropriate based on the evidence presented at trial indicating that defendants were in technical violation of a subdivision covenant requiring defendants to maintain the community sewer system.[2] The court concluded that the violations — though minor — did warrant relief and issued the following injunction:

> Defendants . . . shall comply with, abide by, or perform all terms and conditions of (A) State subdivision/wastewater permit (# EC-5-1824), as amended (either to date, or hereafter); and/or (B) paragraph 8 of the applicable deed covenants . . . all to the extent said terms and conditions apply to or concern the shared sewage disposal system located on Plaintiffs' property.[3]

---

[2] These technical violations appear to include a deficient alarm located inside defendants' home, a deficient light attached to the pump station, poor location of a power cord running to defendants' house, the lack of a separate panel box for the power source, and the lack of an electric meter to monitor how charges were split between the users of the septic system.

[3] The relevant covenant provides the following:

> There is located on lot #1 a primary and reserve community wastewater disposal area which is designed to serve lots 1, 3, 4 and 5 of the subdivision. The location of the disposal area and the common sewer lines are shown on the plans

Plaintiffs, however, take issue with the terms of the injunction and argue that the trial court improperly pegged compliance with the covenant to compliance with any amendments to the state wastewater permit. Instead, plaintiffs argue that the terms of the covenant require compliance with the state wastewater permit as it existed when the covenants went into effect in 1989.[4] In denying plaintiffs' motion to amend, the trial court refused to credit plaintiffs' argument that the applicable covenant provision binds defendants to the terms of the state wastewater permit as it existed in 1989 "forever and without end, regardless of any changes in conditions, or regulatory provisions,

entitled "Proposed Site Plan of the S & M Associates Property, Gallup Road, Morristown, Vermont," prepared by Charles Burnham, Inc., dated August, 1989 and which has been approved by the Department of Environmental Conservation as a part of State of Vermont Subdivision Permit No. EC-5-1824 dated November 7, 1989 and recorded in the Morristown Land Records. . . . Those items beyond the pump station serving individual lots, i.e., sewer lines, septic tank(s), pump station(s), etc. shall be the responsibility only of that lot gaining beneficial use from that equipment. Private sewer lines, septic tanks, pump stations, etc. shall be installed as detailed on the state approved engineering plans.

[4] Though plaintiffs' brief fails to identify the significance of the permit amendment, it appears from oral argument and from the trial court's order that plaintiffs believe the amendment lessens the maintenance requirements previously in place for septic systems.

which the State wastewater engineers may determine are necessary, reasonable, and appropriate." The court found that "[s]uch a result is unreasonable, not required by the manifest intent of the parties expressly set forth in Covenant # 8, and would be bad public policy to boot." On appeal, plaintiffs repeat their argument below regarding the interpretation of the covenant provision. In addition, plaintiffs argue that the court erred in considering the amendment to the state wastewater permit, as it was not properly introduced into evidence.

¶ 8. "Our review of the court's decision to grant injunctive relief is for abuse of discretion." *Alberino v. Balch*, 2008 VT 130, ¶ 7, 185 Vt. 589, 969 A.2d 61 (mem.). We will review the trial court's findings in the light most favorable to the nonmoving party and will uphold factual findings unless clearly erroneous. *Id.* As we noted in *Huard I*, where there have been violations of a subdivision covenant requiring repair or maintenance of common areas, an injunction may be necessary to ensure future compliance. 2008 WL 2781189, at *3; see also *Collins v. Hayden on the Hudson Condo.*, 602 N.Y.S.2d 867, 868 (App. Div. 1993) (mem.) (granting injunction in favor of condominium owner to compel board to repair common area); *Agassiz W. Condo. Ass'n v. Solum*, 527 N.W.2d 244, 249 (N.D. 1995) (noting that injunctive relief available to compel compliance with condominium bylaws requiring board to make repairs to common areas); *Sea Pines Plantation Co. v. Wells*, 363 S.E.2d 891, 896 (S.C. 1987) (upholding injunctive remedy enforcing restrictive covenant in subdivision). We also note that trial courts have wide discretion to fashion fair and just equitable relief. See *Richardson v. City of Rutland*, 164 Vt. 422, 427, 671 A.2d 1245, 1249 (1995) ("Courts have a wide range of discretion to mold equitable decrees to the circumstances of the case before them." (quotation omitted)); *George Basch Co. v. Blue*

*Coral, Inc.*, 968 F.2d 1532, 1542 (2d Cir. 1992) ("It is axiomatic that the contours of an injunction are shaped by the sound discretion of the trial judge and, barring an abuse of that discretion, they will not be altered on appeal.").

¶ 9. With these standards in mind, we conclude that the trial court's injunction, premised on its construction of the relevant covenant provision to reflect any amendments to the state-issued wastewater permit, was entirely reasonable. The language of covenant 8 simply does not support plaintiffs' argument that the provision binds the owners to the letter of the 1989 permit, especially considering that the provision itself merely references the 1989 permit and does not explicitly peg compliance with the covenant to compliance with the specifications of the permit as it existed in 1989. Compare *Cold Brook Fire Dist. v. Adams*, 2008 VT 28, ¶ 4, 183 Vt. 614, 950 A.2d 1206 (mem.) (concluding that where language in restrictive covenant tracked language found in 1988 water supply standards, it was necessary to look to standards in effect in 1988 rather than amended standards to determine current compliance with covenant).[5]

Instead, the requirement that sewer lines, septic tanks, and pump stations comply with "state approved engineering plans" indicates a broader intent to peg compliance with the covenant to a much wider swath of state wastewater regulation, including amendments to existing permits.

II.

¶ 10. Plaintiffs next contend that the trial court erred in its calculation of attorney's fees awarded to plaintiffs. Plaintiffs argue that the court erred in: (1) calculating the lodestar amount, particularly in its deduction of hours claimed by two of three attorneys; and (2) reducing the total award by one-third.

¶ 11. Parties are ordinarily responsible for their own fees, except, as here, where there is a statute or agreement that provides otherwise. See *Perez v. Travelers Ins. ex rel. Ames Dep't Stores, Inc.*, 2006 VT 123, ¶ 8, 181 Vt. 45, 915 A.2d 750.[6] "When determining an award of attorney's fees, the trial court must make a

---

[5] Having concluded that it was appropriate for the trial court to acknowledge any amendments to the state wastewater permit in ordering compliance with the covenant, we must reject plaintiffs' contention that the trial court's consideration of the amendment amounted to extrajudicial consideration of facts neither pled nor submitted into evidence. Indeed, because we agree with the trial court that there is no other way to read covenant 8 other than to interpret it as *requiring* compliance with the *current* state permit, the effect of the injunction would be the same even if the trial court had simply ordered "compliance with Covenant No. 8" as plaintiffs ask us to require on appeal. We also note that this is not a case where the specific provisions of the amendment

were at issue; indeed, the court did no more than reference the fact that the relevant covenant is pegged to compliance with state environmental regulation and that such regulation, from time to time, is amended.

[6] Here, by signing the subdivision declaration, the parties agreed that:

> In the event that the Grantor, or any other owner or owners of a lot, enforces any of these covenants against the owner or owners of a lot who is in breach or violation thereof, all costs and expenses, including attorney's fees, incurred in such enforcement shall be the obligation of and paid by the owner or owners whose breach or violation necessitated such action.

determination based on the specific facts of each case and, accordingly, we grant the trial court wide discretion in making that determination." *L'Esperance v. Benware*, 2003 VT 43, ¶ 21, 175 Vt. 292, 830 A.2d 675; accord *Human Rights Comm'n v. LaBrie, Inc.*, 164 Vt. 237, 251, 668 A.2d 659, 669 (1995). In determining a reasonable award, "courts should begin with what is referred to as the 'lodestar' amount: the number of hours reasonably expended on the case multiplied by a reasonable hourly rate." *Perez*, 2006 VT 123, ¶ 10 (quotation omitted). Once the court arrives at a lodestar amount, the court can then adjust the number upward or downward based on a number of factors, including "the novelty of the legal issue, the experience of the attorney, and the results obtained in the litigation." *Id.* (quotation omitted).

¶ 12. In arriving at the lodestar amount here, the trial court considered the affidavits and timesheets submitted by plaintiffs from three different attorneys who participated in the litigation. Taking judicial notice of the prevailing legal rate for similar attorneys in the same geographic vicinity, the court determined that the rates charged by each of the three attorneys (ranging from $150 to $175 per hour) were reasonable and commensurate with the rates charged by similarly experienced counsel. Plaintiffs, however, take issue with the court's deduction from the claimed litigation hours offered by two of plaintiffs' attorneys.

¶ 13. Plaintiffs object to the deductions from the hours claimed by Attorney Fewell and Attorney Stevens, arguing that the court employed "vague, nonspecific reasoning" in justifying its deductions. Notwithstanding plaintiffs' arguments, the trial court set forth a painstaking accounting of how it arrived at the net amount of litigation hours for each of the three attorneys. For instance, the court took care to explain that it was necessary to deduct approximately twenty hours from Attorney Fewell's claimed total because the court found that those hours were "directed at client consultations, strategy, ineffective dealings with opposing counsel, or inevitable inefficiency, as well as allocating some amount to the companion case which was litigated simultaneously, and in which these Plaintiffs were *not* the prevailing parties." The court came to a similar conclusion with regard to the hours claimed by Attorney Stevens, deducting approximately sixty-six hours from the total amount claimed. The court based its deduction, again, on findings of "inefficiency" and that time was spent on "other matters not directly related to resolution of the core legal issues, as well as some allocation of time to the companion case litigated simultaneously."

¶ 14. Though the court did not produce an itemized list of exactly which hours proffered by Attorneys Fewell and Stevens it deducted, we conclude that, given the above-cited reasoning behind its deductions, such specificity was not necessary. Indeed, because the litigation of the companion case was occurring simultaneously and because the timesheets submitted by the attorneys do not appear to separate hours devoted to each case, it would be impossible for the trial court to invoke the specificity demanded by plaintiffs on appeal. See *Windsor Sch. Dist. v. State*, 2008 VT 27, ¶ 15, 183 Vt. 452, 956 A.2d 528 (finding no abuse of discretion where "owing to the difficulty of deriving a precise, 'accurate to the hour' figure for the time spent strictly on site management" the trial court determined that a $20,000 deduction of the claimed charges reflected a "fair approximation" of the work performed); *Perez*, 2006 VT 123, ¶ 13 (holding that evidence of attorney's fees "need not reach the level of detail and justification required in federal bankruptcy proceedings"); *LaBrie*, 164 Vt. at 252, 668 A.2d at 670 (concluding that factual determination that forms basis for

award of attorney's fees "is best left undisturbed absent strong evidence" that it was erroneous). Given that the touchstone of the inquiry is reasonableness, we discern no abuse of discretion here.[7]

¶ 15. Next, plaintiffs argue that the one-third reduction of the lodestar amount was also an abuse of the trial court's discretion. The court, after taking into account the above deductions and adding the claimed amount for fees and expenses, arrived at a lodestar amount of $25,461.72. The court then reduced the award to $16,972.78, noting that a "1/3 reduction seems appropriate, necessary and reasonable here since the ultimate 'results achieved' were minimal and arguably could, and would have been obtained solely by pursuing the related, and much less expensive permit amendment proceedings." Finally, the court noted that plaintiffs' "apparent intent in pursuing [the] litigation was tinged with retributive motives." Again, we discern no abuse of discretion in this deduction.

¶ 16. We have noted that among the factors a trial court may look at in deciding whether to increase or reduce a lodestar amount is the result obtained by the attorney. See *LaBrie*, 164 Vt. at 251, 668 A.2d at 669 (" 'Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the

amount of a reasonable fee' " (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983))). Here, plaintiffs were ultimately unsuccessful on most of their legal claims and garnered limited injunctive relief based on a finding of "technical violations" of the relevant covenant provision. It was not an abuse of discretion for the trial court to take the limited success of plaintiffs' suit into consideration in reducing the lodestar amount. See *Singer v. State*, 472 A.2d 138, 144-45 (N.J. 1984) ("[I]f a successful plaintiff has achieved only limited relief in comparison to all of the relief sought, the court must determine whether the expenditure of counsel's time on the entire litigation was reasonable in relation to the actual relief obtained, and, if not, reduce the award proportionately." (citation omitted)).

¶ 17. Plaintiffs' final contention, that the court impermissibly considered plaintiffs' "retributive motives" in its one-third reduction of the lodestar amount, is similarly without merit. Plaintiffs make a somewhat convoluted inference that the reference to plaintiffs' motives indicate that the trial judge impermissibly relied on facts he learned through his participation in prior litigation between the parties. First, there is no indication that the court relied on any facts learned during the earlier litigation between these two parties to come to its conclusion about the motive behind the suit. Indeed, notwithstanding the earlier litigation, there was ample basis to support the conclusion that retribution was a motivating factor of the present case, including plaintiffs' refusal to take part in discovery. See *Grisby v. Progressive Preferred Ins. Co.*, 225 P.3d 101, 107 (Or. Ct. App. 2010) (rejecting plaintiff's argument that attorney's unreasonable conduct should be inapposite to exercise of discretion in reducing attorney's fee award). The trial court's reference to the reality of what can only be described as contentious litigation between neighbors was, therefore, not er-

---

[7] Plaintiffs also contend that the court's deduction of what it deemed duplicative filing fees claimed by Attorneys Fewell and Stevens was error. We note that the records of charges submitted by each attorney fail to specify to what court the claimed $250 filing fees were submitted. Given this lack of specificity and the absence of strong evidence indicating error, we will not overturn the trial court's factual finding that the filing fees were in fact duplicative. See *LaBrie*, 164 Vt. at 252, 668 A.2d at 670.

ror. Plaintiffs' related claim that the trial court judge should have recused himself fails for the same reason. The retributive motive behind the present case was readily apparent from the conduct of the parties, and there is no indication that the trial judge was biased in any way or that he considered any facts he may have learned in previous litigation in rendering his decision.

*Affirmed.*