*Bank of America, N.A. v. New England Quality Service, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of November, two thousand nineteen.

Present:     PIERRE N. LEVAL
             DEBRA ANN LIVINGSTON,
             JOSEPH F. BIANCO,
                  *Circuit Judges*.

_____

BANK OF AMERICA, N.A.,

                  *Plaintiff-Counter-Defendant-Appellee*,

            v.                                      18-2459

NEW ENGLAND QUALITY SERVICE, INC., A VERMONT CORPORATION, EARTH WASTE & METAL, INC., A VERMONT CORPORATION, EWM REAL ESTATE INC., A VERMONT CORPORATION, EWM, INC., A VERMONT CORPORATION, EWS OF NY, INC., A NEW YORK CORPORATION, AMERICAN WASTE & METAL OF TN, INC., A TENNESSEE CORPORATION, AMERICAN WASTE & METAL, LLC, A VERMONT LIMITED LIABILITY COMPANY, AMERICAN WASTE & METAL COMPANY OF NEW YORK, LLC, A NEW YORK LIMITED LIABILITY COMPANY, CASE STREET HOLDINGS, LLC, A VERMONT LIMITED LIABILITY COMPANY, AMERICAN IRON & METAL OF TN, INC., A TENNESSEE CORPORATION, KEVIN C. ELNICKI, AN INDIVIDUAL,

                  *Defendants-Counter-Claimants-Appellants*,

1

WYRE WHEEL REAL ESTATE, INC., A VERMONT CORPORATION,

*Defendant-Appellant*

---

For Defendants-Appellants: SHANNON A. BERTRAND (Heather Z. Cooper, *on the briefs*), Facey Goss & McPhee, P.C., Rutland, VT

For Plaintiff-Appellee: DANIEL F. FLORES (Kara Thorvaldsen, *on the briefs*), Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, New York, NY

Appeal from a judgment of the United States District Court for the District of Vermont (Crawford, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendants-Appellants[1] appeal from a grant of summary judgment in favor of plaintiff Bank of America ("the Bank"). The Bank sued Appellants seeking to enforce and collect on certain loans following Appellants' default. Appellants asserted various counterclaims and affirmative defenses. In a series of orders, the district court dismissed Appellants' counterclaims, deemed their defenses unavailing, found in favor of the Bank, and awarded attorneys' fees to the Bank. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\* \* \*

---

[1] "Appellants" refers to the following entities, collectively: New England Quality Service, Inc., Earth Waste & Metal, Inc., EWM Real Estate, Inc., EWM, Inc., EWS of NY, Inc., American Waste & Metal of TN, Inc., American Waste & Metal, LLC, American Waste & Metal Company of New York, LLC, Case Street Holdings, LLC, American Iron & Metal of TN, Inc., Wyre Wheel Real Estate, and Kevin C. Elnicki ("Elnicki").

2

"We review *de novo* the award of summary judgment, 'construing the evidence in the light most favorable to the nonmoving [parties]' and 'drawing all reasonable inferences and resolving all ambiguities in [their] favor.'" *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017)) (brackets in original omitted). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## I. Waiver/Estoppel

"There is no question that a party to a contract may lose the right to assert a term of the contract, or to require performance of a part of the contract, by waiver or estoppel." *Greenmoss Builders, Inc. v. King*, 155 Vt. 1, 6 (1990). Waiver of a contract right is "the intentional relinquishment or abandonment of a known right, and the act of waiver may be evidenced by express words as well as by conduct. . . . [I]t involves the act or conduct of one party to the contract only, and involves both knowledge and intent on the part of the waiving party." *Toys, Inc. v. F.M. Burlington Co.*, 155 Vt. 44, 51 (1990) (quoting *Lynda Lee Fashions, Inc. v. Sharp Offset Printing, Inc.*, 134 Vt. 167, 170 (1976)). Where, as here, Appellants rely on a theory of implied waiver, they "must show that [they] honestly and reasonably believed, based on the [Bank's] conduct, that the [Bank] would forego asserting some right to which it was otherwise entitled, and that [Appellants] acted to [their] detriment in reliance on that belief." *Anderson v. Coop. Ins. Cos.*, 179 Vt. 288, 291 (2006).

Appellants assert that the Bank's consistent waiver of covenant defaults prior to August 25, 2015, coupled with the Bank's extension of the maturity dates on certain loans effectively waived its rights to enforce in the event of future defaults. We disagree. Whenever the Bank waived a covenant default, it did so solely as to the specific loan and the particular covenant

3

breached.    Indeed, the first time the Bank waived default, it explained to Elnicki "the importance of meeting the requirement in the future."    A. 123.[2]    Similarly, each written notice extending a maturity date stated that the Bank was not committing "to extend the Credit beyond the date specified."    *E.g.*, S.A. 60, 62, 64, 66, 68, 70, 74, 76, 78.    And the loan agreements themselves provided that, "[i]f the Bank waives a default, it may enforce a later default."    *E.g.*, S.A. 148, 316, 349, 381, 577.    In other words, the Bank's conduct does not suggest that it intended to waive future defaults generally, or the Basic Fixed Charge Coverage Ratio covenant specifically.    *Cf. Anderson*, 179 Vt. at 292 (notice allowing plaintiff to reinstate lapsed insurance "did not reflect any intention to reverse" prior decision to deny coverage for accident that occurred during lapse).

Nor does Appellants' conduct indicate that they relied on these prior waivers and extensions.    They submitted quarterly compliance certificates from March 2013 through June 2015, indicating that they did not rely on the waivers but rather sought to comply with loan terms even after the initial waivers.    Likewise, when they did fail to comply, they promptly cured those failures.    Such a course of conduct by Appellants demonstrates that they strived to remain in compliance with the terms of their loans, which is inconsistent with their theory that they "honestly and reasonably believed . . . that the [Bank] would forego asserting" its rights under the loan agreements.    *Anderson*, 179 Vt. at 291.    The only reasonable inference that may be drawn from the foregoing is that the Bank did not waive its right to enforce covenant defaults.

Appellants' alternative estoppel defense fails for largely the same reasons.    "An estoppel may be effectively asserted only if the plaintiff can demonstrate that he suffered a deleterious change in position in reliance on misleading representations or conduct of the party sought to be

---

[2]  "A." refers to Appellants' Appendix. "S.A" refers to the Bank's Supplemental Appendix.

4

estopped." *Hebert v. Jarvis & Rice & White Ins., Inc.*, 134 Vt. 472, 477 (1976). "[E]quitable estoppel has four elements . . . : (1) the party to be estopped must know the facts; (2) the party being estopped must intend that its conduct be relied upon or the party asserting estoppel has a right to believe that the conduct is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely on the conduct of the party to be estopped to its own detriment." *Reed v. Zurn*, 187 Vt. 613, 619–20 (2010). Here, the Bank consistently informed Appellants that they had violated certain covenants and specifically waived its rights as to the covenant violated. In other words, the Bank regularly took steps to determine the extent of its rights and pursue a proper course of action. *See Hebert*, 134 Vt. at 477. Accordingly, the Bank did not "intend that its conduct be relied upon" as a broad decision to not enforce its rights nor did Appellants have "a right to believe that the conduct [was] so intended." *Reed*, 187 Vt. at 619–20.

## II. Duress

Appellants next argue that Scott Card ("Card"), a Bank employee, threatened, berated, and browbeat Elnicki into signing certain loan documents. This behavior, they assert, renders the February 2015 loan agreement invalid due to duress. "Generally speaking, improper pressure during the bargaining process, *i.e.*, duress, operates to undermine a party's manifestation of assent and thus undermines one of the foundational cores of any agreement." *EverBank v. Marini*, 200 Vt. 490, 500 (2015). Vermont recognizes two types of duress: "duress by physical compulsion, which renders an agreement void, and duress by improper threat, which results in an agreement that is voidable by the victim." *Id.* at 502 (citing Restatement (Second) of Contracts §§ 174–76 (1981) ("Restatement")). Appellants solely claim duress by improper threat.

5

Assuming, *arguendo*, that Card's conduct amounted to an improper threat, that only rendered the loans *voidable* by Appellants. But Appellants took no action to disavow the loans. They never filed a complaint with the Bank, refused to comply with the loans' terms, or otherwise took action indicative of an intent to void, and they accepted the benefits of the refinancing by making payments under the new terms. Thus, even if the loans extended in February 2015 were voidable, Appellants ratified them. Appellants offer no argument to the contrary and no reasonable jury could conclude otherwise.

## III. Preliminary Agreement

Appellants further contend that a binding preliminary agreement existed, requiring the Bank to continue to negotiate and, ultimately, to extend additional loans and restructure Appellants' pre-existing debts. The existence of "an enforceable contract to negotiate the remaining terms in good faith" is reviewed *de novo* because the existence of "an enforceable contract [is] a matter of law." *Miller v. Flegenheimer*, 203 Vt. 620, 625 (2016). Under Vermont law, two factors determine whether the parties have an enforceable contract or merely an unenforceable preliminary agreement: "the parties' intent to be bound and the definiteness of terms in the communications between the parties." *Id.*

There is "a 'strong presumption' against finding a binding obligation" in incomplete preliminary agreements that include significant unsettled terms. *Id.* at 626 (quoting *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989)). Accordingly, "intent to be bound" is evaluated "using an objective test," that considers whether "unequivocal" words or acts manifest such an intent. *Id.* A four-factor test guides this analysis: "'(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the

6

alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.'" *Id.* at 627 (quoting *Catamount Slate Prods., Inc. v. Sheldon*, 176 Vt. 158, 164 (2003)). None of these factors weigh in Appellants' favor.

*First*, Appellants offer no evidence that the Bank expressed an intent to be bound. Appellants rely solely on internal documents produced by the Bank to assess the viability of discrete transactions. To the extent those internal memoranda and reports refer to an interconnected set of lending arrangements, they solely identify them as *proposed* credit facilities, not final agreements. Such language indicates a reservation of the right not to be bound. *See Catamount*, 176 Vt. at 164; *see also Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 549–50 (2d Cir. 1998) (document titled "proposal" which states that it is contingent "upon the execution of a sales agreement contract" expresses intent not to be bound); *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 81 (2d Cir. 1985) (phrases such as "proposed agreement" and "subject to consummation of the proposed settlement" indicative of reservation).

*Second*, Appellants contend that the extension of a $4.5 million loan for the purchase of a shredder amounts to partial performance. Not so. While that loan was discussed alongside other proposed elements of the alleged preliminary agreement, the record indicates that the Bank never viewed the $4.5 million loan as an inextricable part of any agreement. Rather, the Bank was merely assessing the full landscape of its relationship with Appellants prior to extending a substantial loan. The Bank's ongoing relationship with Appellants and prior extension of credit to them does not evince a comprehensive agreement such that extension of one loan constituted partial performance.

*Third*, Appellants do not dispute that many terms of the alleged preliminary agreement had not been fixed. "While it is true that 'not all terms of a contract need to be fixed with

7

absolute certainty,' it is also true that an agreement 'in which a material term is left for future negotiations[] is unenforceable.'" *Miller*, 203 Vt. at 628–29 (quoting *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007)). "Therefore, terms left open for negotiation must be minor terms," *id.* at 629, or the contract must define "a practicable, objective method of determining the [omitted] essential terms," *Toys*, 155 Vt. at 49. Assuming, *arguendo*, that the Bank's internal documents served as a draft preliminary agreement, material terms remained open, including interest rates and repayment schedules for the future or restructured loans. Moreover, to the extent the agreement involved a mortgage on certain transfer stations, the terms of purchase of the transfer stations were never agreed upon or incorporated into any proposed financing. The failure to fix such terms or provide a method for determining them weighs against a finding of an enforceable contract. *See, e.g.*, *Miller*, 203 Vt. at 628–29; *Catamount*, 176 Vt. at 165–66.

*Fourth*, Appellants do not dispute that the preliminary agreement was never reduced to writing nor that such a complex financing arrangement usually would be. *See Willey v. Willey*, 180 Vt. 421, 428 (2006).

*Finally*, the communications between the parties did not express the terms of this proposed agreement with a sufficient degree of definiteness. *Miller*, 203 Vt. at 625. Indeed, the most concrete expression of this alleged preliminary agreement consists solely of internal, preliminary documents prepared by the Bank and not shared with Appellants until discovery, and Appellants point to no communications between the parties that contain more definite terms. Instead, they rely on vague communications regarding future loans and possible restructurings. Such generalized discussions are insufficient to support a finding that a binding preliminary agreement existed. *See id.* at 630–31.

In sum, Appellants have failed to establish a binding preliminary agreement and the district court properly dismissed this counterclaim.

## IV.    Waiver of Right to Jury Trial

Because we affirm the district court's grant of summary judgment, there will not be a trial in this case.   Thus, Appellants' arguments related to the jury trial waiver are moot, and we do not address them.   *See B & L Sales Assocs. v. H. Daroff & Sons, Inc.*, 421 F.2d 352, 354 (2d Cir. 1970); *Century Pac., Inc. v. Hilton Hotels Corp.*, 354 F. App'x 496, 497 n.1 (2d Cir. 2009).

## V.    Attorneys' Fees

Finally, Appellants object to the district court's decision to award attorneys' fees without hearing expert testimony as to the reasonableness of the fees sought.   "We review a district court's award of attorneys' fees for abuse of discretion."   *Barbour v. City of White Plains*, 700 F.3d 631, 634 (2d Cir. 2012).

Appellants assert that Vermont law requires a court to receive expert or independent testimony when awarding fees.   Neither case relied on by Appellants mandates such a practice. *Parker, Lamb & Ankuda, P.C. v. Krupinsky* recognized that, "*[i]f an attorney's fees are in dispute*, the record is often best served on the issue of reasonableness by the receipt of expert testimony from independent counsel."   146 Vt. 304, 309 (1985) (emphasis added).   But *Parker* also acknowledges that where the trial court "fix[es] the reasonable value of legal services"—as occurred here—"the fee allowed by a trial court will ordinarily not be disturbed unless there is strong evidence of excessiveness or inadequacy . . . ."   *Id.* at 307 (quotation marks and citation omitted).   Appellants offer no evidence of excessiveness.   Indeed, the district court awarded only the portion of the fee request that was *unchallenged* by Appellants.

9

Nor does *Bruntaeger v. Zellar*, 147 Vt. 247 (1986), stand for the broad proposition that expert testimony is required when awarding fees.   While the court there recognized that such testimony is useful where the only evidence submitted was counsel's bill, *id.* at 254–55, courts have repeatedly upheld awards even absent expert testimony.   *See, e.g.*, *Ring v. Carriage House Condo. Owners' Ass'n*, 198 Vt. 109, 121–23 (2014); *Huard v. Henry*, 188 Vt. 540, 544–45 (2010); *Gokey v. Bessette*, 154 Vt. 560, 567 (1990); *see also CARCO Grp., Inc. v. Maconachy*, 718 F.3d 72, 85 (2d Cir. 2013).   The district court here considered not only the bills submitted, but two attorney affidavits, publicly available information regarding counsels' backgrounds and prior fee awards, and other cases discussing prevailing rates in Vermont.   On such a record, we cannot conclude that the court abused its discretion.

*     *     *

We have considered Appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

10