Filed: 12/05/2025

VERMONT SUPERIOR COURT

Lamoille Unit
154 Main Street
Hyde Park VT 05655
802-888-3887
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 77-6-18 Lecv

---

**Patterson & Smith Construction v. Fr. Emmanuel Lemelson et al**

---

## DECISION ON ATTORNEY'S FEES

Following a jury trial, judgment was entered in this case for plaintiff Paterson & Smith Construction against defendants Father Emmanuel Lemelson and Anjeza Lemelson under the Prompt Payment Act in the amount of $124,567 comprising $67,545.51 in principal owed under plaintiff's invoices to defendants and $57,021.64 in pre-judgment interest; $15,000 on plaintiff's claim for breach of contract against Father Lemelson; and $10,000 on plaintiff's claim for unjust enrichment against Anjeza Lemelson. Judgment was entered for plaintiffs on defendant's counterclaims for breach of contract and related claims.

Plaintiff now moves under Vermont Rule of Civil Procedure 54(d) and 9 V.S.A. § 4007(c) for $125,876.80 in attorney's fees and costs. Defendants oppose the request as unreasonable and disproportionate given the nature of the case. A hearing on the fee request was held on August 19, 2025, at which plaintiff presented expert testimony from attorney Erin Miller Heins.

For the reasons set forth below, plaintiff's motion is granted in part, and the court awards plaintiff's attorney fees in the amount of $114,204.61.

## Background

Plaintiff, represented by the Dinse law firm, filed this complaint in 2018 to collect on unpaid invoices related to construction work performed on a chapel on defendants' property. As amended, the complaint pled claims under the Prompt Payment Act, breach of contract, and unjust enrichment. Defendants filed counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, negligent misrepresentation, tortious interference with contractual relations, and conversion. All of the claims and counterclaims related to plaintiff's work on the chapel. Attorney Susan Flynn appeared as co-counsel for plaintiff to defend against the counterclaims. The parties represented at the fee hearing that Attorney Flynn's involvement was at the behest of plaintiff's insurer.

Discovery and motion practice followed, including plaintiff's motion in limine to preclude defendants from presenting expert testimony, which was granted; defendants' motion for summary judgment, which was denied; defendants' motion to reopen discovery, which was denied, and plaintiff's motion to modify the writ of attachment, which was

granted. Defendants changed counsel multiple times. The case was deemed trial-ready in early 2023, but due to the court's calendar, the case was not set for trial until early 2025. A pretrial conference was held on January 7, 2025. Both sides filed pretrial motions concerning evidentiary issues, which were granted in part. A three-day jury trial was held in March 2025, after which the jury returned a verdict in plaintiff's favor on all claims and counterclaims.[1] Limited post-trial motion practice followed, including the pending fee motion and hearing.

## Analysis

The Prompt Payment Act provides in relevant part that "notwithstanding any contrary agreement, the substantially prevailing party in any proceeding to recover any payment within the scope of this chapter shall be awarded reasonable attorney's fees in an amount to be determined by the court or arbitrator, together with expenses." 9 V.S.A. § 4007(c).

As a threshold matter, defendants argue that plaintiff should not be able to recover fees incurred for defending against plaintiff's counterclaims. The court is not persuaded. Defendants' counterclaims were inextricably related to plaintiff's claim under the Prompt Payment Act. *See* Defs.' Counterclaim Compl. ¶¶ 15-17 (alleging plaintiff breached the construction contract because plaintiff's work was "not performed in a manner that would lead to reasonable charges for the work"), ¶¶18-21 (alleging plaintiff breached the covenant of good faith and fair dealing through excessive time charges, incompetent work, and inadequate supervision), ¶¶ 22-26 (alleging plaintiff misrepresented the expertise of its employees, adherence to specifications, and the costs and supervision of the work); ¶¶ 31-34 (alleging that plaintiff removed building materials from the site that belonged to defendants).[2] In other words, all of the claims arise from a "common core of facts." *The Electric Man, Inc. v. Charos*, 2006 VT 16, ¶¶ 9-11, 179 Vt. 351 (citing *L'Esperance v. Benware*, 2003 VT 43, ¶¶ 24, 175 Vt. 292). The court accordingly declines "to break the lawsuit into a series of discrete claims so that the hours expended can be divided on a claim-by-claim basis and only a portion thereof compensated." *See Burton v. Jeremiah Beach Parker Restoration & Const. Mgmt. Corp.*, 2010 VT 55, ¶ 12, 188 Vt. 583 (internal quotations omitted). Because plaintiff prevailed on all the related claims and counterclaims in this payment dispute, it is the "substantially prevailing party" within the meaning of

---

[1] Defendants voluntarily dismissed their counterclaim for tortious interference with contractual relations at the outset of trial, following the court's ruling on defendants' motion in limine, which held that plaintiff was precluded from presenting evidence of defendants' payment disputes with other parties, except as relevant to rebut evidence plaintiff presented on this counterclaim. *See* Pretrial Order (Mar. 11, 2025).

[2] As noted above, defendants made a strategic decision not to pursue their tortious interference counterclaim.

Section 4007(c). Plaintiff is accordingly entitled to recover its attorney's fees and costs, to extent that request is "reasonable given the demands of the case." *See Soon Kwon v. Eaton*, 2010 VT 43, ¶ 20.[3]

A panel of the Vermont Supreme court recently explained the relevant framework for evaluating an attorney's fee award:

> In calculating the award of attorney's fees, the court looks to the most useful starting point, the 'lodestar figure,' by determining the number of hours reasonably expended on the case multiplied by a reasonable hourly rate, and then adjusting that fee upward or downward based on various factors. Those factors may include the novelty of the legal issue, the experience of the attorney, and the results obtained in the litigation, among others.

*Bourne's Inc. v. Lemelson*, No. 24-AP-260, 2025 WL 1356368, at *4 (Vt. May 9, 2025) (unpub. three-justice entry order). Whether hours were "reasonably expended" requires exercise of "billing judgment" to determine whether certain time billed should be excluded from the fee request as "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Plaintiff requests $83,856.90 in fees for Dinse's work on the case and $42,019.90 for Attorney Flynn's work on the case, for a total of $125,876.80.

The Dinse law firm's billing rates ranged from $155 for associate time at the outset of the case in 2018 to $450 for senior partner time when the case went to trial in 2025. The original complaint was filed by Dinse partner Shapleigh Smith, whose billing rate was then $325 per hour. Attorney Barnard came aboard shortly thereafter at a rate of $260 per hour. By the time of trial, Attorney Barnard had taken on the lead role for Dinse and was billing $400 per hour.[4] As calculated by plaintiff's expert (and not challenged by defendants), Dinse billed an average rate of $360 per hour over the life of the case. Attorney Flynn's billing rates (from two law firms) ranged from $130 to $155 over the life of the case. Plaintiff's expert credibly testified that these rates were reasonable and consistent with (Dinse) or below (Flynn) prevailing market rates for attorneys handling construction litigation in Vermont, and defendant presented no contradictory evidence. The court accordingly finds the hourly rates billed by plaintiff's counsel to be reasonable.

---

[3] Defendants cite several out-of-state cases in support of their argument that the court should only award fees that are directly related to a claim for which fees are statutorily available, *i.e.*, plaintiff's claims and not defendants' counterclaims. The Vermont Supreme Court, however, has squarely rejected that argument when it comes to disputes under the Prompt Payment Act. *The Electric Man*, 2006 VT 16, ¶¶ 11-12 (statute should be applied "relatively broadly" to cover all claims "arising out of the same controversy").

[4] Attorney Barnard's billing rate increased incrementally between $10 and $40 per hour each year. Plaintiff's expert credibly testified that these annual increases were consistent with the market for Vermont law firms handling construction litigation.

Defendants argue, however, that the total hours billed by plaintiff's attorneys were not reasonable insofar as they were excessive and duplicative. Defendant generally challenges plaintiff's use of two law firms but has not specifically challenged plaintiff's invoices, except to claim that the 96 hours that Dinse billed in March 2025 (the month of the jury trial) was excessive.

The court has reviewed the 147 pages of invoices provided in support of plaintiff's fee request. Based upon that review, and in consideration of the expert testimony provided, the court cannot conclude that the amount of time expended by counsel to litigate this case was generally excessive. What began as a straightforward collection matter for unpaid invoices was aggressively litigated over seven years, including through the filing of multiple counterclaims, discovery, substantial motion practice, mediation, and ultimately a three-day jury trial. Although defendants argue Attorney Barnard's trial preparation in March 2025 was excessive, they present no support for that argument except to state that much of his work related to routine trial preparation tasks or drafting jury instructions. But 32.7 of those hours were for the jury draw and trial itself. The remaining 63.3 hours were spent on trial preparation tasks such as reviewing jury questionnaires, reviewing and preparing exhibits, preparing witness examination outlines, drafting a pretrial memorandum and proposed jury instructions, and conferring with clients and witnesses. Although these tasks can be described as routine, defendants have provided no basis for the court to conclude they were unreasonable given the demands of the case.

The court does, however, conclude that there was a degree of redundancy or duplicative effort over the course of the litigation. As the court understands it, plaintiff hired the Dinse firm to collect on its unpaid invoices. When defendants pled counterclaims, plaintiff's insurer agreed to pay for the defense of those counterclaims and retained Attorney Flynn as co-counsel for plaintiff.[5] As noted above, however, the original claims and the counterclaims are closely related and arise from a core set of common facts. Although plaintiff was entitled to retain two law firms, that was a business decision made to take advantage of insurance coverage. Hiring two law firms was not reasonably necessary to litigate the case. The court accordingly concludes that defendants should not be responsible for any redundancy involved by having multiple law firms representing plaintiff. That includes time billed for Attorney Flynn to get up to speed on the litigation, which the court calculates as $3,386.50, representing her bills in 2018 for 8/6, 8/7, 8/16, 8/21, 8/30, 9/6, 11/8, 11/12, 11/13, 11/15, and 11/26.

Once Attorney Flynn got up to speed, however, her work on the case generally reduced overall costs given her lower hourly rate. But there remained a degree of redundancy insofar as the involvement of multiple law firms required increased

---

[5] Notably, although Attorney Flynn's invoices may have been paid by a third-party insurance company, there is no dispute that her client was plaintiff Patterson & Smith Construction.

communication between counsel. Dinse's invoices reflect numerous entries involving communications with Attorney Flynn, as well as numerous other entries involving internal communications between Dinse attorneys. While some communication between co-counsel is to be expected, the court finds the amount billed for this purpose by Dinse was caused not by the reasonable demands of the case but by independent decisions made on plaintiff's side to use multiple attorneys. Dinse's invoices generally are not broken out by individual task, so it is impossible for the court to determine with precision what deductions should be made on account of this redundancy. The court will accordingly reduce Dinse's lodestar amount by 10%, or $8,385.69, which the court finds, based on its review of the invoices, to approximately reflect the inter- and intra-office communication not reasonably required by the demands of the case. The court declines to further reduce Attorney Flynn's lodestar amount, as her invoices reflect a reasonable amount of communication with co-counsel, at a significantly lower rate than the Dinse firm.

Defendants do not dispute that plaintiff obtained an excellent result for their client in this case or that plaintiffs' counsel are experienced attorneys. The court accordingly declines to make any further adjustments to the lodestar amount on those bases. Although defendants argue that this was a straightforward collection case, the litigation history, as described above, belies that argument. The court accordingly also declines to make a downward adjustment on that basis.

The court accordingly awards plaintiff attorney's fees for the Dinse firm's work in the amount of $75,471.21 and from Attorney Flynn's firms in the amount of $38,633.40, for a total of $114,104.61.

### Order

Plaintiff's motion for attorney's fees is GRANTED IN PART. The court awards plaintiff's attorney's fees in the amount of $114,104.61.*

Electronically signed on: 11/6/2025 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge

**\*This decision was amended on December 4, 2025, to correct a clerical error that had mistakenly increased the total judgment amount by $100.**